UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARCO CRIOLLO,

                            Plaintiff,

                  -against-

NY FINE INTERIORS INC., *et al.*,

                            Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 5974 (EK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On April 17, 2019, plaintiff Marco Criollo commenced this action against defendants NY

Fine Interiors, Inc. ("NY Fine Interiors"), NY Fine Interiors & Woodwork Inc. ("Interiors &

Woodwork") (the "corporate defendants"), and defendant Damian Cejnog (collectively,

"defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201

et seq., Articles 6 and 19 of the New York Labor Law ("NYLL"), and the various wage orders

promulgated thereunder and codified at 12 N.Y.C.R.R. §§ 135-146.  Plaintiff alleges that

defendants failed to pay overtime rates for all hours worked over 40 in a week, failed to provide

a wage notice and wage statements in compliance with NYLL §§ 195.1 and 195.3, and

terminated plaintiff's employment in retaliation for his complaints about the manner in which he

was paid.

Despite service of the Summons and Complaint on the two corporate defendants through

service on an agent of the Secretary of State of New York (see ECF Nos. 7, 8), and service on

defendant Cejnog and Interiors & Woodwork on November 7, 2019 (see ECF Nos. 9, 10) – as

discussed in depth below – defendants failed to file an Answer or otherwise move with respect to

the Complaint.  Accordingly, on February 2, 2020, plaintiff filed a request seeking to have the

Clerk enter default, which was noted on February 6, 2020.

1

On June 1, 2020, plaintiff filed his motion for default judgment, seeking unpaid wages, overtime wages, liquidated damages, interest, statutory damages based on the wage notice violations, and damages based on plaintiff's claim of retaliation. On June 3, 2020, the motion for default judgment was referred to the undersigned by the Honorable Eric Komittee to prepare a Report and Recommendation.

On June 19, 2020, defendants appeared through counsel and requested additional time to respond. The Court granted this request for an extension, along with other requests, including an extension requested to allow the parties to engage in settlement discussions. On August 12, 2020, defendants filed their opposition to plaintiff's motion for default judgment, arguing that the default was not willful, that Damian Cejnog "never received actual knowledge of the summons and complaint," and that defendants had a meritorious defense. On August 19, 2020, plaintiff filed his reply. Thereafter, on August 26, 2020, defendants sought permission to file a Sur-Reply in response to certain assertions made in plaintiff's Reply, including *inter alia*, an accusation that defendants had offered into evidence "documents which have been doctored and/or created in lieu of records they were obligated to maintain by law." (Pl.'s Reply[1] at 9). On December 16, 2020, the Court granted the request to file a Sur-Reply and set a hearing on the issue of service and defendants' motion to set aside the default. (See Electronic Order and Electronic Scheduling Order, dated December 16, 2020).

On January 14, 2021, the undersigned held a hearing on the issue of the adequacy of service. The hearing was then continued on February 2, 2021, and additional witnesses testified. (See ECF Nos. 46, 47). At the conclusion of the hearing, the parties were given an additional

---

[1] Citations to "Pl.'s Reply" refer to Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, filed August 19, 2020, ECF No. 27.

three weeks to supplement the record.  (See Minute Entry, dated February 4, 2021).  Defendants

then requested and were given an extension until March 1, 2020 to supplement the record.  (See

Electronic Order, dated February 19, 2021).  Both parties filed additional affidavits

supplementing the record.  (See ECF No. 49-51, 53).  Finally, the parties requested to file post-

hearing briefs.  (ECF No. 52).

Now that the time to supplement the record has concluded, the undersigned respectfully

recommends that the court deny plaintiff's motion for default judgment and set aside the default.

The Court also denies the parties' motion to file additional briefs.

## FACTUAL BACKGROUND

Plaintiff alleges that the corporate defendant NY Fine Interiors Inc. is a New York

domestic corporation, with its principal place of business located at 43-12 54th Road, Maspeth,

New York 11378.  (Compl.[2] ¶ 3).  Defendant NY Fine Interiors & Woodwork Inc. is also a New

York domestic corporation, with its principal place of business located at 163-53 84th Street,

Howard Beach, New York 11414.  (Id. ¶ 4).  According to the Complaint, defendant Damian

Cejnog is the owner, member, major shareholder, officer, director, and/or manager of both

corporate defendants and individually responsible for unpaid wages pursuant to New York

Business Corporation Law.  (Id. ¶¶ 5, 6).  Plaintiff alleges that the defendants are contractors

engaged in the business of manufacturing and installing "upmarket custom-made cabinetry and

woodwork," whose activities affect interstate commerce and who have an annual sales volume of

not less than $500,000.  (Id. ¶¶ 8, 13).

Plaintiff alleges that in or around the beginning of June 2018, he entered into an oral

---

[2] Citations to "Compl." refer to the plaintiff's Class Action Complaint, filed on October
14, 2019, ECF No. 1.

contract with defendants in which he agreed to work as a cabinet maker in the defendants' Maspeth shop in exchange for an hourly rate of $30 per hour.  (Id. ¶ 14).  Plaintiff claims that he worked for defendants from the beginning of June 2018 until February 14, 2019.  (Id. ¶ 15). Plaintiff alleges that he regularly worked six days a week, Monday through Saturday, from 7:00 a.m. until 5:00 p.m., with a half hour lunch break, for a total of 57 hours per week.  (Id. ¶ 16).

According to the Complaint, plaintiff was paid bi-weekly through two checks:  one check was issued by Interiors & Woodwork, reflecting plaintiff's pay as $14.00 per hour; the second check was issued by NY Fine Interiors, reflecting the difference between $14.00 an hour and the $30.00 an hour which was the agreed-upon rate of pay.  (Id. ¶ 17).  Plaintiff asserts that the second check was issued to "cash" and never included a pay stub.  (Id.)  Plaintiff further alleges that for the first month of his employment, defendants only paid him $24 an hour, despite their oral agreement, and began paying the $30 per hour in July, but only after Criollo threatened to leave their employment.  (Id. ¶ 18).  Plaintiff also alleges that despite regularly working over 40 hours per week, he was never paid overtime for the hours worked in excess of 40 per week. (Id. ¶ 19).  Finally, plaintiff alleges that he never received wage notices as required by law.  (Id. ¶ 20). Plaintiff claims that he complained to the defendants that he was being paid "off the books" and not properly compensated for the overtime hours he worked.  (Id. ¶ 22).  According to plaintiff, approximately one week after making these complaints to defendant Cejnog, plaintiff was terminated in retaliation.  (Id. ¶ 24).

Plaintiff brings claims for unpaid minimum and overtime wages under the FLSA and NYLL, claims for wage statement and wage notice violations in violation of the NYLL, and for retaliation under both the FLSA and NYLL.

Following the filing of the Complaint on April 17, 2019, defendants failed to file an

4

Answer or otherwise move with respect to the Complaint. A default was entered against defendants on February 6, 2020. This motion for default judgment was filed on June 1, 2020.

On August 12, 2020, defendants opposed the motion for default. (See ECF Nos. 24-26). Defendants requested that the Court deny plaintiff's motion for default based on defendants' reasonable excuse and lack of willfulness in failing to answer the Summons and Complaint, and based on defendants' meritorious defense. (Defs.' Mem.[3] at 2). Defendants alleged that Mr. Cejnog addressed plaintiff's motion for default judgment "as soon as he obtained actual knowledge of the plaintiff's motion papers. Damian Cejnog, however, never received actual knowledge of the summons and complaint in this action." (Id.) Mr. Cejnog submitted an affidavit in which he explained that his office – located in Maspeth and the address on record with the Secretary of State for NY Fine Interiors – was inundated with junk mail (Cejnog Decl. ¶ 6(a)), and that his home address in Howard Beach – the address on record with the Secretary of State for Interiors & Woodwork – was undergoing renovations during November 2019. (Cejnog Decl. ¶ 6(b)). As such, Mr. Cejnog stated that he never received the Summons and Complaint, but immediately responded to the motion for default judgment upon becoming aware of it. (Id. ¶ 5).

The Court scheduled a hearing on the adequacy of service for December 16, 2020. The hearing consisted of two parts – one on January 14, 2021, the other on February 2, 2021. Two witnesses appeared on behalf of the plaintiff. First, Jay Brodsky, president of ABC Process Service Bureau, testified as to the procedures observed by his company in serving process upon Mr. Cejnog and Interiors & Woodwork on November 7, 2019. (1/14/2021 Tr. at 11-42). Mr.

---

[3] Citations to "Defs.' Mem." refer to the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Default Judgment, filed on August 12, 2020, ECF No. 26.

Brodsky explained that his process servers are licensed and required to maintain an electronic record of every service that they effectuate.  (Id. at 17-18).  As such, each process server takes a photograph of the location he or she is supposed to serve through an application that stamps the photograph with both the GPS coordinates and the time.  (Id. at 18).  The actual process server, Mohamed Elgizawy, also testified.  (Id. at 46).  Mr. Elgizawy confirmed that on November 7, 2019, he served the Summons and Complaint at the Howard Beach location.  He took a photograph of the Cejnogs' Howard Beach residence, then proceeded to hand the Summons and Complaint to the woman who answered the front door.  (Id. at 49-50).  According to Mr. Elgizawy, the woman who answered the door identified herself as Mr. Cejnog's wife and confirmed that Mr. Cejnog lived there.  (Id. at 50).

At the continuation of the hearing on February 2, 2021, defendants' witnesses were called.  Joanna Cejnog, Damien Cejnog's wife, testified that she and her family were living at a Ridgewood, Queens apartment during November 2019 – not at the Howard Beach house. (2/2/2021 Tr. at 6).  She also testified that she drove her husband to the airport on November 7, 2019, leaving the Ridgewood apartment at 6:30 p.m. and that she was not at home when the process server claims to have delivered the Summons and Complaint.  (Id. at 14).  Damian Cejnog also testified that they were living in the Ridgewood apartment in November 2019.  (Id. at 27).  He testified to the extent of the renovations, about his flight on the evening of November 7, 2019, and his first awareness of this case on June 19, 2020.  (Id. at 27-41).

Defendants also supplemented the hearing exhibits with three additional affidavits, from Damian Cejnog; Ireneusz "Eric" Cejnog, Damian Cejnog's cousin; and Jeruy Gorski, owner of A&J Remodeling & Renovation Corp., as to the renovations at the Howard Beach residence.

(See ECF Nos. 49, 50, 51).  On March 2, 2021, plaintiff Criollo submitted a responsive

declaration challenging the statements made in defendants' submissions.  (ECF No. 53).

DISCUSSION

A.  <u>Motion for Default Judgment – Standards</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ.

P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  <u>See</u> <u>Enron Oil</u>

<u>Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u>

<u>id.</u>  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default

judgment.  <u>See</u> Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has

cautioned that since a default judgment is an extreme remedy, it should only be entered as a last

resort.  <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has

recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not

processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court

must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be

heard."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96.  Thus, in light of the "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and doubts should be resolved in favor of the defaulting party.  <u>Id.</u>  Accordingly, plaintiffs are

not entitled to a default judgment as a matter of right simply because a party is in default.  <u>See</u>

7

Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants. See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., No. 10 CV 9250, 2012 WL 3194968, at *5 (S.D.N.Y. Aug. 7, 2012).

The burden is on the plaintiffs to establish their entitlement to recovery. See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. Id. For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except

those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

Pursuant to Rule 55(c), the Court may set aside an entry of default for good cause.  The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b).  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).  The main factors for the Court to consider in determining the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96; Meehan v. Snow, 652 F.2d at 277.  Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result.  Id.  The party seeking relief from an entry of default bears the burden of proof.  Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting In re Martin-Trigona, 763 F.2d 503, 505 n. 2 (2d Cir. 1985)).  As discussed above, however, defaults are not favored and doubts are to be resolved in favor of a trial on the merits.  Meehan v. Snow, 652 F.2d at 277.

Finally, "where service of process is insufficient, the court has no power to render judgment and the judgment is void."  In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1299 (11th Cir. 2003).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."  Lian Qing Yu v. 58 Asian Corp., No. 16-CV-7590 (AJN), 2018 WL 1415214, at *1 (S.D.N.Y. Mar. 20, 2018), citing Commer v. McEntee, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003).

In this case, it is clear that defendants are in default; they did not file an Answer, nor did

they respond to the Complaint in any way.  However, upon receiving the papers in connection

with plaintiff's motion for default judgment, defendants have now appeared and argue that a

default judgment should not enter at this time.

B.  Analysis

    1.  Service of Process

       In moving to set aside the default, defendants argue that they never received proper

service of the Summons and Complaint, and therefore had no knowledge of the lawsuit until Mr.

Cejnog received the papers filed in connection with the default judgment.

       Plaintiff has submitted affidavits of service demonstrating that on October 28, 2019, he

served both NY Fine Interiors and Interiors & Woodwork by service upon the Secretary of State

of New York, pursuant to Sections 306, 306-A, and 307 of the New York Business Corporation

Law.  (Wisniewski Decl.[4] ¶ 6, Ex. 2).  Plaintiff has also submitted an affidavit of service

showing that defendant Cejnog was served on November 7, 2019, by substituted service pursuant

to CPLR § 308 (2).  (Id. ¶ 8, Ex. 3).  Damian Cejnog, however, claims that he never received

actual knowledge of the Summons and the Complaint in this action.  (Defs.' Mem. at 2).

       Personal jurisdiction is a necessary prerequisite to entry of a default judgment.  If a

defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil

Procedure and does not waive formal service, the court lacks personal jurisdiction over the

defendant.  See Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir.

1978); see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279,

---

    [4] Citations to "Wisniewski Decl." refer to the Declaration of Robert Wisniewski, Esq. in
Support of Plaintiff's Motion for Default Judgment, dated June 1, 2020, ECF No. 17.

1282 (S.D.N.Y. 1989) (stating that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effected in order to subject a defendant to the court's jurisdiction. See Fed. R. Civ. P. 4. Thus, it is well established that failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment. See, e.g., Orellana v. World Courier, Inc., No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom plaintiff had not adequately proved service); Cowder v. Admin. for Children & Families, No. 09 CV 628, 2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where service had not been properly effected); Llaviganay v. Cipriani 110 LLC, No. 09 CV 737, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment). Here, the defendants have not indicated any intention to waive service; thus, the issue is whether all necessary documents have been served in compliance with the requirements of Rule 4.

Under the Federal Rules of Civil Procedure, a natural person may be served by "following state law for serving a summons . . . in the state where the district court is located" or by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(1), (e)(2)(B). Rule 4 also provides that service may be affected by "following state law . . . [of] the state where the district court is located." Fed. R. Civ. P. 4(e)(1). New York provides for service upon an individual by delivering the summons and complaint to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode . . ." to be followed by

mailing a copy to the individual's "last known residence."  N.Y. C.P.L.R. § 308.  Thus, in this

case, service under Rule 4 may also be deemed proper if plaintiff has complied with New York

law.

Federal Rule of Civil Procedure 4(h) provides that service on a corporation may proceed

in two ways.  A plaintiff may deliver a copy of the summons and complaint to an officer,

managing or general agent, or "any other agent authorized by appointment or by law to receive

service."  Fed. R. Civ. P. 4(h)(1)(B).  A plaintiff may also serve a corporation "in the manner

prescribed by Rule 4(e)(1) for serving an individual[,]" which allows for service according to

state law in which the federal district court is located or where service is made.  Fed. R. Civ. P.

4(h)(1)(A); 4(e)(1).  Under New York law, a corporation can be served through "an officer,

director, managing or general agent, or cashier or assistant cashier or to any other agent

authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a)(1).  Moreover,

CPLR § 311(a)(1) recognizes that an agent for service on a corporation includes the Secretary of

State of New York under N.Y. Bus. Corp. Law §§ 306 and 307.  Baker v. Latham Sparrowbush

Assocs., 72 F.3d 246, 254 (2d Cir. 1995) ("New York designates the Secretary of State as agent

for service of process for all corporations").

The technical requirements of Rule 4 notwithstanding, courts have recognized that the

fundamental purpose of service is to give defendants notice of the claims against them; due

process requires that service be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections."  DPWN Holdings (USA), Inc. v. United Air Lines, 871 F. Supp. 2d 143, 154

(E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314

(1950)).  At its core, this standard is one of reasonableness.  Id.  Thus, courts will deem valid

efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the documents mailed.  See, e.g., Burda Media, Inc. v. Blumenberg, No. 97 CV 7167, 2004 WL 1110419, at *6-*7 (S.D.N.Y. May 18, 2004).

On August 12, 2020, defendant Cejnog submitted a Declaration in Opposition to plaintiff's motion for default judgment, claiming that he first became aware of the lawsuit on June 19, 2020 when he "found the envelope with the Motion for Default on a workbench in my company's shop in Maspeth, New York." (Cejnog Decl.[5] ¶ 5).  According to Mr. Cejnog, he immediately, "within five minutes of finding the documents," informed his attorney, who asked for more time to respond.  (Id.)  Mr. Cejnog asserts that he never received the Summons and Complaint, and never had any communication from plaintiff's attorney prior to receiving the motion for default judgment.  (Id. ¶ 6).

He claims that NY Fine Interiors is located at 43-12 54th Road in Maspeth, which is where his office is located.  (Id.)  His employees bring in the daily mail delivery to him in the office, but he has instructed them to discard the junk mail.  (Id. ¶ 6(a)).  He speculates that an employee discarded the Summons and Complaint, not knowing that it was not junk mail.  (Id.)

According to Mr. Cejnog, the Howard Beach address, which is listed with the Secretary of State as the service address for Interiors & Woodwork, is his home address.  (Id. ¶ 6(b)).  Mr. Cejnog represents that between August 2019 and December 2019, he and his family moved to an apartment in Ridgewood, Queens while his Howard Beach home was undergoing renovation. (Id.)  Since plaintiff served the Summons and Complaint upon Interiors & Woodwork at that address through the Secretary of State on October 28, 2019, and also served Mr. Cejnog

---

[5] Citations to "Cejnog Decl." refer to the Declaration of Damian Cejnog in Opposition to plaintiff's motion for default judgment, dated August 12, 2020, ECF No. 24.

personally at that address during the period he was not living there, he speculates that "in the disarray of my temporary living conditions, the Summons and Complaint just never reached me." (Id.)  He asserts that he "would never disregard a summons and complaint," and avers that as soon as he became aware of the Motion for Default Judgment, he contacted his attorney.  (Id. ¶ 6(c)).  He further claims that in March 2019, he received a communication from a paralegal about monies owed to Mr. Criollo and he asserts that he promptly returned the call and tried to deal with the issue.  (Id. ¶ 6(d)).  He asserts that if he had received actual notice of the Summons and Complaint, he would have responded: "I would never disregard a summons and complaint." (Id. ¶ 6(c), (e)).

As discussed above, the Court held a hearing on the issues of service on January 14, 2021 and February 2, 2021.  Despite defendant Cejnog's assurance that he did not receive the Summons and Complaint, the record raises doubts as to his claim.  First, defendants NY Fine Interiors and Interiors & Woodwork were both served via the New York Secretary of State.[6] (See ECF Nos. 7, 8).  According to the Secretary of State's website, NY Fine Interiors' address for service of process is listed as 43-12 54th Road in Maspeth, while Interiors & Woodwork's address for service is listed as Mr. Cejnog's Howard Beach address.  Since plaintiff has provided affidavits of service showing service through the Secretary of State at both Mr. Cejnog's business and residential addresses, defendants should have received notice of this lawsuit.

In addition, plaintiff has presented evidence showing that Mr. Cejnog and Interiors & Woodwork were also served on November 7, 2019, through personal service at the Howard Beach address by a process server retained by plaintiff's counsel.  Although the affidavit of

---

[6] Defendants do not seem to contest that the corporate defendants were properly served. (See Defs.' Mem. at 2, stating only that "*Damian Cejnog . . .* never received actual knowledge" of the Complaint (emphasis added)).

service does not provide the name of the individual who was served at the Howard Beach address, the process server, Mohaned Elgizawy, testified at the hearing before this Court that he served Mr. Cejnog's wife at the Howard Beach home address.  (1/14/2021 Tr. at 50).  To corroborate the testimony of the process server, plaintiff introduced Exhibit 6 into the record.  (See ECF No. 38-6).  Exhibit 6 is a photograph taken by the process server on November 7, 2019, depicting the house the process server claims to have served.  (Id.)  The photograph includes both a time stamp, showing the photograph was taken at 7:05 p.m. on November 7, 2019, which is when the process server testified he effected service, and the GPS coordinates of the house.  (Id.)  The GPS coordinates correspond to the defendant's Howard Beach home address, which is also the address listed with the Secretary of State for service on Interiors & Woodwork.  (Id.)

The plaintiff also presented the testimony of Jay Brodsky, the president of the company responsible for serving process in this case, ABC Process Service Bureau.  Mr. Brodsky assured the Court that the photograph and GPS coordinates accurately depict when and where the photograph was taken.  (1/14/2021 Tr. at 18, 41).  From the evidence, it appears that Mr. Elgizawy, an experienced process server, went to defendant's Howard Beach residence on November 7, 2019 at 7:05 p.m., consistent with his affidavit of service.

Defendants, however, dispute that Mr. Cejnog's wife was served with the Summons and Complaint, claiming that Mr. Cejnog and his wife were not living at the Howard Beach residence in November of 2019.  Both Damian and Joanna Cejnog testified that the Howard Beach residence was undergoing renovations at that time and defendants presented photographs showing a bathroom under construction.  (2/2/2021 Tr. at 9-10, 18, 27).  The Cejnogs testified that the family had moved into Mr. Cejnog's other residence, located at 66-24 Forest Avenue,

Ridgewood, New York 11385.  (2/2/2021 Tr. at 7).  They assert that no one was living in the house at the time the process server claimed to have served a woman who answered the door. (Id. at 7).  They also claimed that they specifically recalled that, on that particular night, Mr. Cejnog was traveling out of town to Poland and that his wife and children drove with him to the airport.  (Id. at 6-7, 32).

Having considered the testimony of the witnesses, along with the photographic evidence demonstrating service, the Court credits the process server's testimony that he actually effected personal service on a woman who answered the door of the house.[7]  Not only did he describe the interior of the hallway, noting that it did not appear as if the house were under construction (1/14/2021 Tr. at 49-51), but he substantiated his claim that he was in that exact location at the time he stated with the photograph of the Howard Beach house, bearing the time and GPS coordinates.  (1/14/2021 Tr. at 41, 67).  Furthermore, from the photographs, the house appears to be occupied, contrary to the claims that it was not being lived in while the construction was going on.  (ECF No. 38-6).  The photograph taken on November 7, 2019 at 7:05 p.m. in the evening by the process server clearly shows that there were lights on throughout the house on both the first and second stories, which does not seem consistent with an empty home.  Even if the house was undergoing renovations, it is unlikely that the construction was ongoing at 7:05 in the evening or that the workmen, if they were there, would have lights on throughout the house. Moreover, the process server averred that, rather than dropping the Summons and Complaint around the side entry or in a mailbox, he handed it to a woman who opened the front door.

---

[7] Importantly, defendants' witnesses did not appear entirely credible.  Although Joanna Cejnog testified that she had not dyed or colored her hair in seven or eight years, plaintiff introduced photos of her from 2019 in which her hair was a markedly different color from her hair as she appeared before the Court on February 2, 2021.  (See ECF No. 38-12).

(1/14/2021 Tr. at 49).

Having considered all of the testimony, the undersigned found plaintiffs' witnesses to be credible and believes it unlikely that the lights depicted in the photograph would be on at 7:05 p.m. if the house were unoccupied for renovations.  There was testimony that another woman lived in a separate apartment in the house and it is possible that the process server left the Summons and Complaint with her, instead of Mrs. Cejnog.  (2/2/2021 Tr. at 57-58).  However, it strains credulity to believe that the woman who answered the door and accepted the Summons and Complaint never gave it to the Cejnogs or that the Cejnogs never retrieved the mail from the Howard Beach address during the entire time period from November 2019 until June 19, 2020 when Mr. Cejnog claims to have found the papers in connection with the default judgment motion.

Moreover, even if Mr. Cejnog never received the copy of the Summons and Complaint that was personally served on his Howard Beach address, it is unclear how defendants failed to receive notice of this lawsuit since the Summons and Complaint were served in a variety of ways and at different locations, not just through personal service at the Howard Beach address.  First, as noted, the evidence shows that plaintiff served both NY Fine Interiors and Interiors & Woodwork through the Secretary of State, at the locations for service designated by defendants. (See ECF No. 45-1, 45-2).  Thus, because defendants were registered with the Secretary of State and designated the Howard Beach address as the location for service only for Interiors & Woodwork, defendant NY Fine Interiors was properly served even if there was a defect in the personal service.[8]  Although Mr. Cejnog testified that he did not regularly retrieve his mail from

_____

[8] Indeed, it appears from the affidavits of service produced by the New York Secretary of State that service at the Howard Beach house was refused (ECF No. 45-2); the same does not appear to be true of service on NY Fine Interiors in Maspeth.  (ECF No. 45-1).

the Howard Beach address while the home was under construction, this does not invalidate service through the Secretary of State. Nor does it have any impact on Mr. Cejnog's ability to receive mail at his business location in Maspeth. Mr. Cejnog's explanation for not receiving the Summons and Complaint at this other location was that his employees may have picked up the mail and discarded it as junk mail. (2/2/2021 Tr. at 37; see also 1/14/2021 Tr. at 6 (Mr. Cejnog "just may have missed it in his busy life and his busy schedule")). The Court finds it difficult to believe that anyone could successfully operate a business, where presumably the company received other important mail, and allow any of the employees to randomly discard whatever they deemed to be junk mail. At best it is negligent.

Therefore, as a preliminary matter, having reviewed the affidavits of service, the Court respectfully recommends a finding that service upon both corporate defendants and Mr. Cejnog was proper. Plaintiff demonstrated proof of service in accordance with the Federal Rules and with N.Y. C.P.L.R. § 308 and § 311. Although defendants claim not to have received actual notice of the lawsuit until plaintiff sent a copy of the default judgment motion in June 2020, defendants do not appear to contest that service of the corporate defendants was properly effectuated through service through the Secretary of State. See, e.g., Khotovitskaya v. Shimunov, No. 18 CV 7303, 2020 WL 4588345, at *5 (E.D.N.Y. Mar. 10, 2020), report and recommendation adopted, 2020 WL 2110716 (E.D.N.Y. May 4, 2020) (recommending a finding that service was proper despite defendants' contentions that they did not have actual notice of the lawsuit). Thus, this Court has personal jurisdiction over both defendants.

2. Willfulness

Although defendants were properly served and were thus in default, the Court's inquiry does not end there. In determining whether to relieve defendants of the default, the Court must

consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96; Meehan v. Snow, 652 F.2d at 277.

Turning first to willfulness, there must be "more than mere[] neglect or carelessness." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable).  A finding of willfulness does not require that the default occurred due to bad faith, but the default must be the "deliberate and intended consequence of movant's actions."  Id. (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)).  "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse."  Id.

The test for willfulness is not simply whether defendants were properly served and failed to respond.  Instead, the relevant inquiry for determining willfulness relates to the defaulting party's actions after it became aware of the existence of the litigation or entry of default. Prestige Capital Corp. v. Fuber LLC, No. 16 CV 9577, 2017 WL 2558803, at *2 (S.D.N.Y. June 5, 2017) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142-43 (2d Cir. 2010)); In re FKF 3, LLC, 501 B.R. 491, 502 (S.D.N.Y. 2013) (overturning finding of willful default despite defaulting party's admittance of its awareness of the action, proper service, and failure to respond to motion for default judgment, and stating that failure of defaulting party to enter an appearance until a month after learning of the matter, "while negligent, [did] not rise to level of willfulness").

In Swarna v. Al-Awadi, for example, the Second Circuit found that the district court had improperly granted a default judgment, where the individual defendants appeared in the action to file a memorandum opposing the entry of a default judgment, despite their failure to answer the complaint.  622 F.3d at 142.  Of importance, the Second Circuit, in rejecting the district court's

decision to grant a default judgment, noted that defendants retained counsel just one day after receiving the motion for default judgment.  Id.  The court held that willfulness "requires something more than mere negligence, such as egregious or deliberate conduct."  Id. at 143 (citing New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005)).  In this case, defendant Cejnog claims that he informed his counsel of the lawsuit on June 19, 2020, immediately following the arrival of the FedEx package containing plaintiff's motion for default judgement.  (1/14/2021 Tr. at 5; see ECF No. 28-7).  Although the Court finds that defendants were properly served and either had actual notice of this lawsuit or deliberately avoided knowing about it, defendants' counsel was retained on June 19, 2020 – just over three weeks after the plaintiff's motion for default judgment was filed.  Like the circumstances in Swarna, here, defendants have failed to rebut the presumption of receipt and it appears that service was proper.  Although the Court finds defendants' conduct to be clearly negligent, given that defendants "responded promptly after learning of the action," In re FKF 3, LLC, 501 B.R. at 502, the Court does not believe this rises to the level of willfulness that would warrant a default, particularly when considering the other factors of merit and prejudice.  (See infra at 16-19).

3.  Meritorious Defense

In addition to analyzing the willfulness of defendants' conduct, the Court must also consider whether defendants have shown a meritorious defense and whether the plaintiff will suffer prejudice if the default is vacated.  To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."  Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4.  In other words, the defendant must show that there is some determination to be made by the factfinder.  American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d

Cir. 1996). Although the proffered defense "need not be ultimately persuasive at this stage," id.,

defendants cannot simply assert in a conclusory fashion that they would prevail at trial. Aetna

Life Ins. Co. v. Licht, 2004 WL 2389824, at *4. Furthermore, in this context, "a defense that the

parties were properly paid constitutes a 'meritorious defense.'" Addison v. Reitman Blacktop,

Inc., 272 F.R.D. 72, 81 (E.D.N.Y. 2010), citing Franco v. Ideal Mortg. Bankers, Ltd., No. 07 CV

3956, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010).

In his Declaration, Mr. Cejnog disputes plaintiff's claim that he worked 57 hours per

week beginning the week ending June 17, 2018 and continuing through the week ending

February 10, 2019. (Cejnog Decl. ¶ 7). Mr. Cejnog also disputes plaintiff's claims that he

worked Monday through Saturday from 7:00 a.m. to 5:00 p.m. and that he worked an additional

40 hours during the two weeks ending February 24, 2010. (Id.) Mr. Cejnog has attached to his

Declaration the NY Fine Interiors' weekly sign-in sheets which he claims the employees sign at

the start and at the end of the day. (Id. ¶ 8, Ex. A). According to Mr. Cejnog, plaintiff Criollo

appears on these sheets and worked less than the 57 hours per week that he claims to have

worked. (Id. ¶¶ 8, 9). The summary of hours prepared by defendants' attorney shows that for

the period beginning August 13, 2018 through February 24, 2019, plaintiff worked 1,051 hours,

not the 1,408 hours that he claims to have worked. (Id. ¶ 9, Ex. B).

Defendants also point to the Interiors & Woodwork paystub that plaintiff attached to his

affidavit, for the two-week period ending August 26, 2018. (Id. ¶ 10 (citing Criollo Aff.,[9] Ex.

1)). Defendants explain that this paystub reflects plaintiff's first paystub because the amount of

taxes shown in the column "Current Amount" is the same as the amount of taxes shown in the

YTD column. (Id.) The paystub reflects a total of 97 hours worked and not the 114 claimed by

---

[9] Citations to "Criollo Aff." refer to the Affidavit of Marco Criollo, ECF No. 17-5.

plaintiff.  (Id.)  Defendants further assert that all employees take an hour lunch break, not the half

hour claimed by plaintiff, and this is reflected in the summaries shown in Exhibit A.  (Id. ¶ 11).

Accordingly, bearing in mind the preference of the courts to decide cases on their merits,

Meehan v. Snow, 652 F.2d at 277, the Court finds that, if true, defendant's asserted defense may

be "meritorious."[10]  Since there is at least one ground upon which defendants may have

suggested a meritorious defense,[11] the Court proceeds to the next prong.

### 4.   Undue Prejudice

The third factor that the Court must consider in determining whether to excuse a default

is the prejudice to the plaintiff.  Although defendants' failure to act diligently has delayed the

resolution of this case, plaintiff has not asserted that setting aside the notation of default against

defendants will cause the loss of evidence or create increased difficulties for discovery.  See

Ward v. Ramkalawan, No. 11 CV 4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013),

report and recommendation adopted, 2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013) (finding that

"delay alone is not a sufficient basis for establishing prejudice").  Moreover, "no obstacles to

litigation will result if the default is vacated."  Id.  That is especially true, here, where there has

not been an inordinate delay; defendants appeared immediately after receiving the motion for

default judgment, discovery has not yet begun, and both parties will have an opportunity to

---

[10] Plaintiff asserts that defendants "doctored documents" with respect to these records. (Pl.'s Reply at 1).  Even if that is the case, it raises a factual dispute that goes to the merits of the case.  American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d at 61 (2d Cir. 1996) ("A defense is meritorious if it . . . give[s] the factfinder some determination to make").

[11] Additionally, when discussing the meritorious defense prong, some courts have suggested that the question of whether the defendants were "properly served, and thus whether the Court has personal jurisdiction over [them], is an issue of fact, making default judgment inappropriate . . . "  Prestige Capital Corp. v. Fuber LLC, No. 16 CV 9577, 2017 WL 2558803, at *3 (S.D.N.Y. June 5, 2017).  Prior to the Court's hearing on service, this likely would have weighed in favor of setting aside the default judgment.  However, because the Court has found it has personal jurisdiction, this no longer weighs in favor of defendants.

obtain the necessary evidence to proceed with the case.  Moreover, there have been no

allegations that witnesses or evidence have been lost during the consideration of this motion.

     Having considered the three factors, the Court respectfully recommends that the default

be set aside for good cause.  See, e.g., Laffont v. Smarten Media LLC, No. 19 CV 9456, 2020

WL 7232094, at *1 (S.D.N.Y. Sept. 15, 2020).

CONCLUSION

     Accordingly, the undersigned respectfully recommends denying the motion for default

judgment and setting aside the default on the grounds that defendants' default was not willful,

defendant presented a potential meritorious defense, and there is no prejudice to the plaintiff

beyond mere delay.[12]

     Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

     The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

     **SO ORDERED.**

---

[12] With respect to the parties' request to file post-hearing briefs, the parties were given time to supplement the record.  The Court denies this request and issues its Report and Recommendation herein.  To the extent that the parties wish to submit papers in connection with plaintiff's request for fees and costs associated with this motion and hearing, plaintiff's papers are due March 12, 2021; defendant's response is due March 19, 2021.

Dated:  Brooklyn, New York
        March 3, 2021

                                        /s/ Cheryl L. Pollak
                                        _____
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York